UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA LYNN CLARK,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

18-CV-1157-MJR
DECISION AND ORDER



---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 21)

Plaintiff Jessica Lynn Clark ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 14) is denied and defendant's motion (Dkt. No. 19) is granted.

## BACKGROUND[1]

Plaintiff filed for DIB and SSI on March 11, 2014, alleging disability beginning February 18, 2014. (Tr. 15, 206-15)[2] Her claims were initially denied. (Tr. 15, 101-02) Following a hearing, Administrative Law Judge ("ALJ") Anthony Dziepak issued an

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 7)

unfavorable decision on September 19, 2017. (Tr. 15-26) The Appeals Council subsequently denied review on August 27, 2018. (Tr.1-3) This action followed. (Dkt. No. 1)

## DISCUSSION

### I. Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine

conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

3

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations."

4

*Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of February 18, 2014. (Tr. 18) At step two, the ALJ found that plaintiff had the severe impairments of chronic pain syndrome with a neuropathic component, status post preventative double mastectomy surgeries with follow up reconstructive surgeries; and the nonsevere impairments of restless leg syndrome,

gastric ulcers, gastroesophageal reflux disease, anxiety, and depression. (*Id.*) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19) Before proceeding to step four, the ALJ found that plaintiff retained the RFC to:

> perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift/carry ten pounds occasionally, sit for up to six hours total in an eight-hour workday, as well as stand/walk for up to six hours total in an eight-hour workday. However, she must avoid overhead reaching and only occasional reaching in all other directions with the left non-dominant upper extremity. She can frequent[ly] reach in all directions with the right dominant upper extremity, as well as engage in frequent bilateral handling. The claimant must avoid pushing/pulling or operating hand controls with the left non-dominant upper extremity. She must avoid climbing ladders, ropes, or scaffolds, as well as crawling. She can frequently climb ramps/stairs, stoop, kneel, crouch, and balance on uneven surfaces. Finally, she must avoid unprotected heights, operation of heavy machinery or vibrating tools, and no concentrated levels of extreme cold.

(Tr. 20)[3]

Proceeding to step four, the ALJ found that plaintiff was unable to perform her past relevant work as a waitress. (Tr. 24) Proceeding to step five, and after considering testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as ticket seller, ticket taker, and document preparer. (Tr. 25-26) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 26)

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 404.1567(b).

IV.  *Plaintiff's Challenges*

Plaintiff seeks remand of this matter on the grounds that the ALJ improperly evaluated the opinions of record and failed to conduct a proper credibility analysis. (*See* Dkt. No. 14-1 at 2, 16-27)

    A.    Opinion Evidence

It is the ALJ's role to resolve conflicts in the record medical evidence. *See Veino*, 312 F.3d at 588; *see also Pope v. Barnhart*, 57 Fed. Appx. 897, 899 (2d Cir. Feb. 24, 2003) (summary order; "[a]n ALJ has an independent duty to resolve ambiguities and inconsistencies . . . [but] where the inconsistencies do not appear resolvable, the ALJ may decide based on the available evidence"). An ALJ may properly discount the opinion of a treating or examining physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Domm v. Colvin*, 579 Fed. Appx. 27, 28 (2d Cir. Sept. 23, 2014) (summary order); *Micheli v. Astrue*, 501 Fed. Appx. 26, 28-29 (2d Cir. Oct. 25, 2012) (summary order); *see also Burguess v. Berryhill*, No. 17-CV-6204, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018).

Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015); *see also Matta v. Astrue*, 508 Fed. Appx. 53,

56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Plaintiff's impairments stem from a preventative double mastectomy in 2011 after testing positive for a breast cancer gene. (Tr. 853). She underwent multiple surgical revisions related to her double mastectomy, including procedures during the relevant period in February 2014, June 2015, and June, 2016. (Tr. 853, 3040-42, 3252-54, 3285-87) As a result, plaintiff received regular pain management treatment between 2014 and 2017. (Tr. 355-405, 479-614, 814-28, 866-82, 1323-2477, 2478-3632) An electromyogram and nerve conduction study in August 2014 showed mild to moderate left ulnar neuropathy. (Tr. 352-53) At a pain management visit in September 2014, plaintiff reported improvement in her neuropathic pain and said she was functioning well. (Tr. 2601, 2604) Plaintiff generally reported control of pain with medication, continued improvement, and denied side effects from her medications at numerous treatment visits between that time and March 2017. (Tr. 1339, 1425, 1428, 2067, 2074, 2380, 2508, 2513, 2601, 2604, 2612, 2645, 2835, 2891)

As relevant to plaintiff's motion, the ALJ evaluated the following opinion evidence:

On October 7, 2014, approximately eight months after the alleged onset date, plaintiff underwent a functional capacity evaluation with Licensed Occupational Therapist Linda Randall. Plaintiff rated her pain at 3 to 4 out of 10 at the time of the examination, 3 out of 10 at best in the past 30 days, and 9 out of 10 at worst. (Tr. 854) Plaintiff reported that her pain increased with activity and with left arm reaching. (Tr. 854) Grip and pinch

strength testing results were significantly below average for her age and gender. (Tr. 854) Ms. Randall noted that high variance between trials of grip testing suggested submaximal effort on the part of the patient. (Tr. 853-84) Plaintiff demonstrated no significant fine motor deficits in her right hand. (Tr. 854) She could balance on either leg with no difficulty and operate light arm and foot controls. (Tr. 854) Ms. Randall opined that temperatures would aggravate plaintiff's muscle tension, hot temperatures would aggravate her hot flashes, and her toleration of humidity or wetness was limited. (Tr. 853) Ms. Randall assessed no limitations with sitting, standing, or walking. (Tr. 855) Plaintiff could frequently bend, squat, and climb; reach without limitation with her right arm and occasionally with her left arm; kneel occasionally; and never crawl or climb ladders. (Tr. 855) On testing, plaintiff demonstrated an ability to lift and carry 10 pounds at waist level with both arms, lift 7 pounds to the top of her head, and lift 7 pounds from the floor. (Tr. 855) She could push and pull 10 pounds on a non-repetitive basis. (Tr. 855) Plaintiff demonstrated left shoulder limitations due to pain and a reported pulling sensation in her left shoulder and neck during cervical range of motion testing. (Tr. 856)

With respect to Ms. Randall's opinion, the ALJ found, "[w]hile this assessment is from a non-acceptable medical source, the undersigned still gave this opinion significant weight because of its consistency with the record." (Tr. 23)

Plaintiff's primary care provider, Erika Connor, M.D., completed a chronic pain syndrome questionnaire in May 2017. (Tr. 904-05) Dr. Connor indicated that plaintiff had severe chronic pain resulting from post-mastectomy syndrome. (Tr. 904) Dr. Connor opined that plaintiff's pain was associated with a marked restriction in activities of daily living; marked difficulty maintaining social functioning; and deficiencies of concentration,

9

persistence, or pace, resulting in frequent failure to complete tasks in a timely manner. (Tr. 904-05) Dr. Connor did not complete the "comments" section of the questionnaire. (Tr. 905)

The ALJ afforded Dr. Connor's opinion limited weight. Acknowledging that Dr. Connor was plaintiff's treating physician since 2013, the ALJ reasoned that the opinion was unsupported by the longitudinal evidence of record, including plaintiff's pain management records from the alleged onset date forward. (Tr. 24) Additionally, while limited in her activities of daily living, plaintiff's limitations did not rise to the marked level or support restrictions beyond the RFC. (*Id.*)

R. Cohen, M.D., an Agency medical consultant, reviewed the medical evidence and assessed plaintiff's functional limitations in June, 2017. (Tr. 890-98) Exertionally, Dr. Cohen opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours and sit for 6 hours in an 8-hour workday; and push or pull without limitation. (Tr. 892). Posturally, Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but she should avoid ladders because of her left shoulder problem. (Tr. 893) She was also limited to occasional reaching with her left arm, and she should avoid concentrated exposure to vibration because of her left ulnar neuropathy. (Tr. 894-95)

The ALJ gave this opinion partial weight. Dr. Cohen had access to a "significant portion" of the medical record when making his assessment, which "increases the persuasiveness of his opinion." (Tr. 24) However, the ALJ observed, he did not have access to more than 2000 pages of evidence from Roswell Park Cancer Institute

10

submitted on the day of the administrative hearing, and did not have the opportunity to assess plaintiff's testimony regarding her symptoms and limitations. (*Id.*)

Plaintiff primarily argues that the ALJ improperly afforded little weight to the opinion of Dr. Connor, plaintiff's treating physician. (Dkt. No. 14-1 at 18)

Under the regulations applicable to plaintiff's case, a treating source opinion is given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence, and it requires an ALJ to explain weight given to opinions of treating opinions with "good reasons" set forth in 20 C.F.R. § 404.1527(d)(2). *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Under 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5) the ALJ must consider various factors: type of relationship, length of treatment relationship and frequency of exam, nature and extent, supportability, consistency, specialization, and other factors. In determining a plaintiff's RFC, the ALJ will consider all relevant medical and other evidence. 20 C.F.R. § 416. 945(a)(3).

Here, the ALJ recognized that Dr. Connor was plaintiff's primary care provider and had treated her since at least 2013. (Tr. 24) In reviewing Dr. Connor's pain questionnaire in light of the record as a whole, however, the ALJ determined that her answers were not supported by the longitudinal evidence. (Tr. 24) In reaching that conclusion, the ALJ specifically discussed the three general limitations Dr. Connor identified (marked restriction of activities of daily living, marked difficulty in maintaining social functioning, and deficiencies of concentration, persistence, or pace due to pain), but found each inconsistent with the record. The ALJ contrasted Dr. Connor's opinion with plaintiff's treatment records, which indicated "adequate functioning with pain management." (Tr.

11

24, 904-05) The ALJ observed that there was also "little indication from the record" that plaintiff had "any limitations in social functioning or the ability to maintain concentration persistence, or pace related to her impairments." (Tr. 24) Additionally, plaintiff's daily activities, while limited, did not rise to the marked level. (*Id.*) The ALJ explained that the October 2014 functional capacity evaluation and Dr. Cohen's opinions were more consistent with the evidence of record. (*Id.*) In explaining the opinion's lack of supportability by the record as a whole, including treatment notes, other opinions of record, and activities of daily living, the ALJ properly evaluated Dr. Connor's opinion and provided the requisite good reasons for discounting it. *See Meyer v. Saul*, No. 19-CV-0973, 2020 WL 3489406, at *4 (W.D.N.Y. June 26, 2020) ("[W]here, as here, a treating physician's opinion conflicts sharply with the plaintiff's activities of daily living, plaintiff's treatment records, and other medical opinions of record, those inconsistencies comprise 'good reasons' for the ALJ to discount the opinion."); *see generally* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").[4]

Plaintiff also argues that "there is no opinion except for Dr. Connor's opinion that addresses plaintiff's mental health conditions and effects; and so the ALJ improperly relied on his own lay opinion." (Dkt. No. 14-1 at 22)[5] The Court briefly addresses this

---

[4] A reviewing court should remand for failure to explicitly consider the relevant factors unless a "searching review of the record shows that the ALJ has provided 'good reasons' for [the] weight assessment." *See Guerra v. Saul*, No. 18-2646-CV, 2019 WL 4897032, at *1 (2d Cir. Oct. 4, 2019). The agency's regulations do not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013). While the ALJ did not explicitly discuss every factor contained in the regulations, the Court finds, after a review of the record, that the ALJ did not commit legal error.

[5] In support of this argument, plaintiff curiously cites to the entire record. (*See* Dkt. No. 14-1 at 22, citing Tr. 1-3632)

12

point. First, the form completed by Dr. Connor was limited to plaintiff's chronic pain syndrome. (Tr. 904-05) Second, plaintiff does not challenge the ALJ's finding that her anxiety and depression caused no more than minimal limitations in her ability to perform basic mental work activities and were therefore nonsevere under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 18) Finally, the ALJ fully assessed the physical and mental effects of her chronic pain syndrome (in combination with her other impairments), considering the degree of plaintiff's pain itself, the effectiveness and side effects of her medications and treatments, any reported cognitive difficulties, and the effect of her condition on her daily activities. (Tr. 18-19, 21-22)

Plaintiff's assertion that the ALJ had a duty to recontact Dr. Connor or otherwise order further development of the record also fails. (See Dkt. 14-1 at 21-22) The regulations provide that even when the evidence contains an inconsistency, "we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1). This Court has previously found that "[w]here, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification." Jasen v. Comm'r Soc. Sec., No. 16-cv-6153, 2017 WL 3722454, at * 12 (W.D.N.Y. Aug. 29, 2017) (quoting Ayers v. Astrue, No. 08-cv-69, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009)). The ALJ did not err in declining to recontact Dr. Connor or otherwise order further development of a record already containing three medical opinions and more than 3,000 of pages of medical records.

13

The core of plaintiff's challenge to the ALJ's treatment of the evidence is, simply put, a disagreement with the ALJ's evaluation of the record. Yet the question is not whether plaintiff can offer a plausible alternative evaluation of the record, but whether substantial evidence supports the ALJ's overall decision. *See Cohen v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 51, 52 (2d Cir. 2016) (stating that the court may not substitute its own judgment for that of the Commissioner, even if it "might justifiably have reached a different result upon a *de novo* review") (quotation omitted). This Court will not reweigh the evidence presented to the ALJ. *See Laurie G. v. Comm'r of Soc. Sec.*, No. 19-CV-208(TWD), 2020 WL 4668146, at *4 (N.D.N.Y. Aug. 7, 2020) ("it is the ALJ's responsibility to weigh the various opinions, along with other evidence, and determine which limitations were supported by the overall evidence of record. The Court cannot reweigh the evidence under the substantial evidence review standard.").

B.   Credibility Analysis

Plaintiff also contends that "the ALJ failed to offer sufficient analysis of Plaintiff's credibility." (Dkt. No. 14-1 at 23) Again citing to all 3,600 pages of the administrative transcript, plaintiff reiterates her reliance on Dr. Connor's 2017 opinion, apparently taking issue with the ALJ's consideration of her daily activities. (*Id.*)

It is the function of the ALJ, not the reviewing court, to assess the credibility of witnesses. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). An ALJ "may rely on Plaintiff's activities of daily living in weighing opinion evidence in the record." *Coyle v. Comm'r of Soc. Sec.*, No. 5:17-CV-0924, 2018 WL 3559073, *7 (N.D.N.Y. July 24, 2018) (citing *Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. 2016)); *see also Lamorey v. Barnhart*, 158 Fed. Appx. 361, 363 (2d Cir. 2006) ("[I]t is entirely

14

appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities") (citing 20 C.F.R. § 404.1529(c)(3)(i)). However, an ALJ may not "rely almost exclusively on [a plaintiff's daily activities] in her assessment of opinion evidence and ultimate [RFC] determination and . . . not discuss other medical evidence in the record or treatment notations." *Coyle*, 2018 WL 3559073, at *7.

As part of the RFC analysis, the ALJ provided an exhaustive discussion regarding the consistency of plaintiff's allegations with the evidence as a whole under 20 C.F.R. §§ 404.1529 and 416.929. (Tr. 20-23) Among other relevant factors, the ALJ discussed the objective medical evidence, the effectiveness of plaintiff's medications and other treatment, the side effects of her medications, and the effect of her impairments on her daily activities. (Tr. 21-23; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Based on a thorough review of those factors and the entire record, the ALJ determined that, while plaintiff had significant functional limitations, her allegations were not entirely consistent with the record as a whole. (Tr. 21)

Among other evidence, the ALJ specifically discussed plaintiff's testimony from the administrative hearing that she retained the ability to cook, do the dishes, do laundry, and engage in self-care tasks, albeit more slowly due to pain and muscle spasms, and that she went grocery shopping once per month but needed help carrying heavy items. (Tr. 23, 46-47, 53-54, 58) With respect to plaintiff's pain impairment and related symptoms, the ALJ observed that "[i]t is reasonable that an individual with these lifting, reaching, and postural restrictions would have difficulty performing some of her daily activities." (Tr. 23) He accounted for those demonstrated limitations by including lifting, reaching, and

postural restrictions in the RFC. (Tr. 20)  Based on his review of the record as a whole, however, the ALJ found that "the limitations outlined by the claimant do not support additional restrictions [beyond those included in the RFC] particularly when considered with the claimant's course of treatment and the benign objective findings in the record." (Tr. 23)  Here, the ALJ properly considered plaintiff's activities as but one factor in evaluating her allegations of disability. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that the ALJ properly considered that the claimant "was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer."). The Court finds that the ALJ's credibility assessment was supported by substantial evidence.

Overall, the ALJ's decision is supported by substantial evidence and free of legal error, and remand is not required in this case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  September 9, 2020
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

16